JESSE H. JONES, JR. v. DEPARTMENT OF HUMAN RESOURCES

No. 7810SC801

(Filed 4 December 1979)

**State § 12— employee wrongfully discharged—reimbursement denied—failure to return employee to status before discharge**

Where the State Personnel Commission determined that petitioner was wrongfully discharged from his employment in that the charges against him were not proved and he was not given warnings prior to dismissal, was dismissed without notice, and was not given a statement of the reasons for his dismissal and written notice of his appeal rights, the Commission's actions in denying petitioner reimbursement for his net pecuniary loss from the date of his dismissal to his reinstatement, failing to restore to petitioner all sick, vaca-

tion and other leave, and failing to restore to petitioner all benefits of employment as if he had never been dismissed were arbitrary and inconsistent with the Commission's own findings, since the Commission, in failing to order reimbursement and restoration, did not return petitioner as nearly as possible to his status prior to the wrongful discharge.

Judges ARNOLD and ERWIN concur in the result.

APPEAL by respondent Department of Human Resources from *Bailey (James H. Pou), Judge*. Judgment entered 23 August 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 24 May 1979.

*Attorney General Edmisten, by Assistant Attorney Robert R. Reilly, for respondent appellant.*

*Hollowell, Silverstein, Rich and Brady, by Ben A. Rich, for petitioner appellee.*

MARTIN (Robert M.), Judge.

Petitioner Jesse H. Jones was hired by the Department of Human Resources in the summer of 1976 as a boiler room operator, and he worked in that capacity at the Governor Morehead School in Raleigh until 3 December 1976. He was dismissed from his employment at that time, apparently because his job performance was not to the satisfaction of his supervisors. Petitioner appealed his dismissal through the departmental grievance machinery, ultimately bringing his dismissal before the State Personnel Commission for review. He contended that he had been dismissed without just cause. After receiving evidence, the State Personnel Commission's hearing officer made numerous findings of fact and additionally made the following conclusions and recommendations:

1. Petitioner has appealed alleging lack of just cause in his dismissal and failure to follow procedure and policy in effecting his dismissal. The State Personnel Commission, under the authority of North Carolina General Statutes § 126-37 has jurisdiction to hear and decide Petitioner's appeal.

2. State Personnel Policy clearly sets forth two classes of reasons for which a state employee may be dismissed. One class is personal conduct. STATE PERSONNEL POLICY

MANUAL, Disciplinary Action, Suspension, and Dismissal, p. 5-4. In its presentation Respondent has intimated that Petitioner was under the influence of alcohol on December 3, 1976. Respondent did not offer any concrete evidence to support this allegation, only conclusory statements and personal opinion. Respondent has failed to prove this allegation and did not have just cause to dismiss Petitioner on this alleged offense.

3. "In order to determine whether there is sufficient cause to dismiss an employee for cause relating to performance of duties, two (2) aspects of the circumstances leading to this dismissal must be considered. The first is the adequacy or inadequacy of the employee's job performance; the second is the warning process. The warning process is based upon a philosophy of mutual responsibility between the employing agency and the employee to provide the best services possible to the people of this State. Among the employer's responsibilities is to provide training of a quality and type which will enable the employee to perform the job adequately. Among the employee's responsibilities is to carry out his duties adequately. However, when the employer ascertains that the employee is not functioning adequately the dismissal policies promulgated by the Commission casts an additional responsibility upon the employer, and that responsibility is simply that the agency must tell the employee how his performance is not measuring up and must give him the opportunity to improve his performance so that he can do a creditable job." Recommendation of State Personnel Commission in *ROBERTS v DEPARTMENT OF LABOR*, June 23, 1976.

4. Respondent failed to give Petitioner sufficient advance warnings of his deficient performance before dismissing him. Respondent gave Petitioner oral warnings about several areas of his job performance. Although Respondent may have given Petitioner a written warning, this warning only reiterated the subjects of the previous oral warnings; such a warning does not constitute a progressive warning. Petitioner did not receive a final written warning. The lack of these warnings constitute a failure to notify Petitioner adequately of his shortcomings, and is a failure to comply even minimally with State Personnel Policy and Procedure. NORTH

CAROLINA STATE PERSONNEL POLICY MANUAL, Disciplinary Action, Suspension, and Dismissal, "Personal Conduct" pp. 5-2, 5-3.

5. Because of the lack of warnings prior to dismissal, there was insufficient cause to dismiss Mr. Jones on December 3, 1976.

6. Respondent violated State Personnel policy by dismissing Petitioner immediately for performance of duties, without giving Petitioner two weeks notice or two weeks pay in lieu of notice. NORTH CAROLINA STATE PERSONNEL POLICY MANUAL, Disciplinary Action, Suspension, and Dismissal, p. 5-3.

7. Finally, Respondent violated State Personnel Policy and State law by failing to give Petitioner both a statement of the reasons for his dismissal and for failing to give him written notice of his appeal rights when he was dismissed. NORTH CAROLINA STATE PERSONNEL POLICY MANUAL, Disciplinary Action, Suspension, and Dismissal, p. 5-3, North Carolina General Statutes, § 126-35.

Based on the above Findings of Fact and Conclusions, the hearing officer makes the following:

RECOMMENDATIONS:

1. That Respondent reinstate Petitioner to his former position; or, in the alternative, that Respondent offer Petitioner comparable employment in some agency other than the Governor Morehead School;

2. That Respondent reimburse Petitioner for his net pecuniary loss from December 3, 1976 to the date of his reinstatement or other employment;

3. That Respondent restore to petitioner all sick, vacation and other leave, to be computed as if Petitioner had not been dismissed;

4. That Respondent restore to Petitioner all benefits of employment as if Petitioner had never been dismissed;

5. That attorney for Petitioner submit an itemized list of attorney's fees incurred in representing Petitioner in his per-

sonnel appeal through the employee grievance system and before the State Personnel Commission or its hearing officer.

s / E. D. MAYNARD, III
Hearing Officer
February 27, 1978

The full Commission reviewed the action and recommendations of the hearing officer and affirmed his conclusions and findings of fact with respect to petitioner's having been wrongfully dismissed, but declined to give effect to the hearing officer's recommendations 2, 3 and 4 quoted above on the grounds that petitioner's prior job performance did not warrant such awards. Petitioner appealed to the Superior Court, which found that the full Commission had acted arbitrarily and capriciously in declining to give effect to some of the hearing officer's recommendations and reversed the order of the State Personnel Commission insofar as it failed to order reimbursement for net pecuniary loss from 3 December 1976 through 2 May 1978 (the date on which the full Commission ordered petitioner's reinstatement).

Petitioner was notified by letter dated 19 May 1978 and signed by the director of the Governor Morehead School that he had been reinstated effective 2 May 1978 but that his services were no longer required and that he was therefore terminated as of the date of the letter. Petitioner has been unable to secure permanent employment elsewhere since his dismissal.

The protections afforded State employees under the State Personnel Act create a reasonable expectation of continued employment and a property interest within the meaning of the due process clause. *See Faulkner v. North Carolina Department of Correction*, 428 F. Supp. 100 (W.D.N.C. 1977). Chapter 126 of the North Carolina General Statutes established a State personnel system. The State Personnel Commission was created by N.C. Gen. Stat. § 126-2. N.C. Gen. Stat. § 126-4 provides:

Subject to the approval of the governor, the State Personnel Commission shall establish policies and rules governing each of the following:

*        *        *

(9) The investigation of complaints and the hearing of appeals of applicants, employees and former employees and the issuing of such binding corrective orders or such other appropriate action concerning employment, promotion, demotion, transfer, discharge, and reinstatement in all cases as the Commission shall find justified.

N.C. Gen. Stat. § 126-35 provides:

No permanent employee subject to the State Personnel Act shall be discharged, suspended, or reduced in pay or position, except for just cause. . . . The employee, if he is not satisfied with the final decision of the head of the department, . . . may appeal to the State Personnel Commission.

N.C. Gen. Stat. § 126-37 provides:

The State Personnel Commission is hereby authorized to reinstate any employee to the position from which he has been removed, to order the employment, promotion, transfer, or salary adjustment of any individual to whom it has been wrongfully denied or to direct other suitable action to correct the abuse which may include the requirement of payment for any loss of salary which has resulted from the improperly discriminatory action of the appointing authority.

What principles may be derived from these statutes? Initially, the State Personnel Commission has jurisdiction to hear precisely the type of complaint presented by petitioner in the instant case. Next, no employee of any State agency who is subject to the provisions of the State Personnel Act may be discharged from or caused to suffer other detriment in his employment absent the existence of just cause for such action. Additionally, the requirements of due process must be observed in any procedures or actions whose ultimate result may be discharge of or other detriment to an employee. Finally, the State Personnel Commission is authorized to establish policies and promulgate rules governing all employment practices and procedures, subject to the approval of the Governor.

How are these principles applicable to the case before us? The petitioner was an employee of a State agency and was subject to the provisions of the State Personnel Act. The Commis-

sion's hearing officer, who properly found that he had jurisdiction over the parties and questions involved, found from competent evidence that the Department of Human Resources (via the Governor Morehead School) had failed to comply with the practices, procedures and regulations for discharging an employee as set out in the statutes and in the regulations issued by the State Personnel Commission. The hearing officer further found that the Department of Human Resources (via the Governor Morehead School) had failed to prove the charges against petitioner for which it sought to discharge him. Upon the record before us, then, we too may conclude that petitioner was not discharged for just cause, that petitioner did not receive the protections afforded him by due process and that the Department of Human Resources did *not* follow the rules and procedures established by the State Personnel Commission.

Petitioner, then, has suffered a wrong; both the hearing officer and the full Commission are in agreement on that point, and even the State has acceded to that point by failing to except to that conclusion and by not arguing the point in its brief. The question remaining for resolution is what remedy is the appropriate one for the wrong suffered? The hearing officer, who had the best opportunity to observe and analyze the witnesses and their testimony, recommended that petitioner be reinstated in the same or a similar position, that he be reimbursed for his net pecuniary loss and that all benefits and leave that would have accrued to him had he not been wrongfully discharged be restored to him, as well as his attorney's fees being paid. This recommendation gave effect to the intent, implicit in our State Personnel Act and other similar statutes, that when an employee is wrongfully discharged or disciplined and seeks a remedy for that wrong, he should be returned as nearly as possible to *statu quo*, so that he will have suffered no ultimate damage as a result of the wrongful acts of the employing State agency. Petitioner's analogies to labor and civil service cases, made in his brief, are apt and well-taken. *See, e.g., Watson v. United States*, 142 Ct. Cl. 749, 162 F. Supp. 755 (1958).

The full Commission, however, upon review of the hearing officer's recommendations, agreed as to the wrongfulness of petitioner's discharge but gave effect only to the recommendation for reinstatement to the same job held by petitioner and the award of

attorney's fees. We hold that this was arbitrary and inconsistent with the Commission's own findings and was therefore erroneous.

The State has argued with considerable vigor that the remedies available to the State Personnel Commission under N.C. Gen. Stat. § 126-37 for alleviating wrongful acts of employing agencies are purely discretionary with the Commission, and that its finding of wrongful discharge or other disciplinary action does not as a matter of law require that the employee be restored to where he otherwise would have been. The anomaly of this contention is readily apparent: petitioner, even though having suffered a wrongful discharge and having had a binding adjudication to that effect, is still not entitled to any remedy to restore to him what was wrongfully taken away. The hollow nature of the Commission's action is lucidly illustrated by the very facts of this case. Petitioner, having been once wrongfully discharged, was notified of his reinstatement and contemporaneous termination by the same letter. These actions of respondent (petitioner's supervisors at the Governor Morehead School) wholly violate both letter and spirit of the State Personnel Act. That the Act creates rights in subject employees, as heretofore noted, is unquestioned. N.C. Gen. Stat. § 126-35 explicitly states that "[n]o permanent employee . . . *shall be* discharged . . . except for just cause." This is mandatory language, forbidding the arbitrary discharge (or demotion, etc.) of employees protected by the State Personnel Act. (We note that this chapter has been amended subsequently to provide these protections only to employees who have been employed five years or more with the State.) N.C. Gen. Stat. § 126-37 lists a broad range of remedies which are available to the State Personnel Commission to remedy wrongs once they have been found to exist. If, as respondent argues, these remedies are merely discretionary with the Commission and the Commission is not under any obligation to order effective remedies for wrongs committed by State employers upon subject employees after having determined that such wrongs were in fact committed, then there is no reason at all for the Personnel Commission to exist, and its creation by the Legislature was no more than a meaningless gesture which conveys no benefits upon anyone and affords no protection to any State employee from unfair or discriminatory actions by any State employing agency.

In the instant case, it was found by the Commission without exception being taken that petitioner was wrongfully discharged without just cause in that the procedures established by the Personnel Commission (under the authority of the Governor and N.C. Gen. Stat. § 126-4) were not even minimally complied with in petitioner's discharge. Petitioner was then reinstated without back pay or benefits and contemporaneously terminated as of the date of his notice of reinstatement. Was it for this that he followed the departmental appeals procedures to their exhaustion? Was it to achieve this result that the Legislature created the State Personnel Commission? Respondent strains our credulity in pressing the affirmative of these propositions. We are unwilling to assume that the legislative intent in enacting the subject legislation was to create a hollow procedural facade which would serve to identify and adjudicate wrongful acts by State agency employing units and yet which would house no remedies of right to redress the employees who suffered thereby.

The provisions of the State Personnel Act before us for interpretation are essentially remedial in nature, in that they delineate rights of a group which has heretofore suffered some abuse and discrimination, and in that they provide specific safeguards and prohibitions against such abuse or discrimination as well as authorizing broad powers in the reviewing tribunal to correct any abuse or discrimination which is found to have occurred. Accordingly, the statute must be construed broadly rather than narrowly to achieve its purposes. *See, e.g., Wilmington Shipyard Inc. v. North Carolina State Highway Commission*, 6 N.C. App. 649, 171 S.E. 2d 222 (1970); *Burgess v. Brewing Co.*, 39 N.C. App. 481, 250 S.E. 2d 687, *rev'd on other grounds* 298 N.C. 520, 259 S.E. 2d 248 (1979); *also see 3 Sutherland's Statutes and Statutory Construction* 29, 32. A statute must be construed as written, *State v. Wiggins*, 272 N.C. 147, 158 S.E. 2d 37, *cert. denied* 390 U.S. 1028, 20 L.Ed. 2d 285, 88 S.Ct. 1418 (1967), and the mandatory language of N.C. Gen. Stat. § 126-35, as well as the apparent purpose of the statute, leads us to conclude that the remedies authorized by N.C. Gen. Stat. § 126-37 are not discretionary with the Commission to the extent that a remedy ordered by the Commission fails to return an employee to *statu quo* after a final adjudication that he has wrongfully suffered some detriment to his employment status as proscribed by N.C. Gen. Stat.

§ 126-35. *See North Carolina State Art Society v. Bridges*, 235 N.C. 125, 69 S.E. 2d 1 (1952). This construction does no violence to the legislative language, while a contrary construction would serve to defeat or severely impair the object of the statute. *See State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975). We will not adopt a construction that results in palpable injustice when the language of the statute is susceptible to another reasonable construction which is just and is consonant with the purpose and intent of the act, *Little v. Stevens*, 267 N.C. 328, 148 S.E. 2d 201 (1966). The logic of the maxim *"Ubi jus, ibi remedium"* has substantial merit for and applicability to this situation.

In that petitioner has not filed any cross appeal from the Superior Court's judgment and has not excepted to actions not taken by the Superior Court, and has further indicated in argument that he seeks only the back pay and attorney's fees ordered by the trial court, we do not assume any greater jurisdiction than to consider those questions properly before us and order appropriate remedies. We therefore affirm the order of the Superior Court. We disregard certain findings of fact made by the court below, in that they had not been found by the Commission. No exception was taken to their not being found by the Commission and no request for their finding was made by petitioner, upon his petition for review. The Superior Court lacked statutory authority to make such findings within the proper scope of its review of an administrative proceeding. Those findings, however, are not pertinent to our disposition of this case and the result reached would not differ even if they had been properly made. For the reasons stated, the judgment of the Superior Court ordering the State Personnel Commission to order back pay from 3 December 1976 through 2 May 1978 to be paid to petitioner, and awarding petitioner attorney's fees, is affirmed.

Judges ARNOLD and ERWIN concur in the result.