[No. 13051-0-I. Division One. January 21, 1985.]

MARINE POWER & EQUIPMENT CO., *Respondent,* v. THE HUMAN RIGHTS COMMISSION HEARING TRIBUNAL, ET AL, *Appellants.*

*Kenneth O. Eikenberry, Attorney General, Morton M. Tytler, Senior Assistant,* and *Winslow Whitman, Assistant,* for appellants.

*Elizabeth J. Blagg, George S. Martin,* and *James K. Lockett,* for respondent.

COLEMAN, J.—Nadim Shah, a former employee of respondent Marine Power, filed a complaint with the Washington State Human Rights Commission, alleging that Marine Power had discriminated against him because of his national origin. A hearing tribunal ordered Marine Power to pay Nadim Shah $7,500. Five thousand dollars was to compensate Shah for "emotional distress caused by slurs based on his national origin," and the remaining $2,500 was "for emotional distress caused by discriminatory work assignments." Marine Power sought review of this order in the King County Superior Court.

Subsequent to filing its petition for review, the Commission moved for and was granted a stay of the superior court proceedings pending the Washington Supreme Court's decision in *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 641 P.2d 163 (1982). In its motion for a stay, the Commission asserted:

> If this action is not stayed, the Washington State Human Rights Commission has the statutory duty to promptly certify the record of the administrative hearing to this Court. RCW 34.04.130(4). [*See also* RCW 49.60-.270.] This will involve the expense of transcribing the testimony and proceedings in a hearing that lasted five days. This expense may be rendered unnecessary by the Supreme Court's decision in the [*Human Rights Comm'n v. Cheney Sch. Dist. 30*] case.

Shortly thereafter, the Supreme Court filed its opinion in *Cheney,* holding that Washington State Human Rights Commission hearing tribunals lack the statutory authority to award compensation for humiliation and mental suffering caused by unlawful age discrimination.

Relying on *Cheney,* Marine Power moved for partial summary judgment in superior court, seeking reversal of the hearing tribunal's damage award. In response, the Commission argued that *Cheney* applied only to age discrimination cases, and that it could not, in any event, apply

to cases decided by commission hearing tribunals before the court's opinion was filed. It was also argued that it would be improper to resolve these issues on a motion for summary judgment because the trial court would not have the benefit of a complete record of the proceedings before the hearing tribunal. The Commission requested the opportunity to file written briefs and an opportunity to fully present oral argument on all issues pertinent to the Superior Court's review. The Superior Court found *Cheney* controlling, and, in granting Marine Power's motion for partial summary judgment, reversed the tribunal's award of monetary relief. The Commission sought direct review of the partial summary judgment in the Washington Supreme Court. That request for review was denied, and the matter was referred to this court for resolution.

After the original briefs for this appeal were filed, the Legislature amended RCW 49.60.250. The 1983 act added the following underlined language to RCW 49.60.250:

> (5) If, upon all the evidence, the administrative law judge finds that the respondent has engaged in any unfair practice, the administrative law judge shall . . . take such other action as, in the judgment of the administrative law judge, will effectuate the purposes of this chapter, including action that could be ordered by a court, except that damages for humiliation and mental suffering shall not exceed one thousand dollars, and including a requirement for report of the matter on compliance.

Laws of 1983, ch. 293, § 1.

Initially we address the Commission's contention that *Cheney* is limited to its facts and applies only to age discrimination. This analysis is clearly incorrect. The Supreme Court examined the relevant statute and stated:

> Pursuant to RCW 49.60.250 and the italicized language "or to take such other action," the Legislature granted the Commission the power to give hearing tribunals acting in its behalf "general jurisdiction and power" to eliminate and prevent prohibited discrimination. Both parties agree that the Legislature did not *expressly* give such a tribunal the power to award damages for humilia-

tion and mental suffering. However, appellant claims this power by inference under the statutory language of "or to take such other action".

*Cheney,* at 120–21.

> The authority for a tribunal to award damages for humiliation and mental suffering is not provided for, either expressly or by inference. A person who has suffered humiliation caused by discrimination may seek relief through a civil action as provided for under RCW 49.60.030. For these reasons, we hold that a hearing tribunal of the Washington State Human Rights Commission has no authority to award compensation for humiliation and mental suffering caused by unlawful age discrimination.

*Cheney,* at 130. This language leaves no doubt as to the breadth of the *Cheney* holding. Hearing tribunals operating pursuant to this statute simply lack authority to award monetary damages for *any* type of discrimination. Neither the nature nor the extent of the discrimination alleged was relevant to the *Cheney* court's reasoning. Their reasoning was entirely predicated upon statutory analysis.[1]

We next address the Commission's contention that *Cheney* does not apply because the present case was fully adjudicated prior to that decision. This argument is without merit. It is well settled in Washington that once a statute has been construed by the state's highest court, that construction operates as if it were originally written into the statute. *Johnson v. Morris,* 87 Wn.2d 922, 927–28, 557 P.2d 1299 (1976); *Fairley v. Department of Labor & Indus.,* 29 Wn. App. 477, 482, 627 P.2d 961, *review denied,* 95 Wn.2d 1032 (1981). In other words, the judicial construction relates back to the time of the original statutory enactment. Thus, even though the *Cheney* court's con-

---

[1]We note this disposes of appellants' contention that the trial court should not have granted partial summary judgment without a full transcript of the prior hearing. Though a full transcript would have enabled the trial court to fully appreciate and understand the nature of the discrimination involved in the present case, under *Cheney,* the nature and extent of the discrimination is simply irrelevant.

struction was not enunciated when the hearing tribunal entered its award, that construction is, under the relation back rule, what the statute always meant. *Fairley*, at 482. Therefore, appellants' argument for prospective application of the *Cheney* decision must fail.

We now address the significance of the 1983 amendment. The Commission contends the 1983 amendment applies retroactively because it clarifies the original statute and thereby overrules the *Cheney* decision. Alternatively, the Commission argues that the 1983 amendment applies to the present case because the legislative action is remedial, and remedial statutes, absent legislative intent to the contrary, apply retroactively. Concerning the first prong of their argument, the Commission asserts that the 1983 amendment is an interpretation or a clarification correcting an erroneous judicial interpretation of the Legislature's original intent. Though legislative clarifications, as opposed to amendments, are generally retroactive and effective from the original date of the statute, *Johnson v. Morris*, 87 Wn.2d 922, 925, 557 P.2d 1299 (1976), an exception to this rule is applicable here. The exception may be stated as follows:

> The usual purpose of a special interpretive statute is to correct a *judicial interpretation* of a prior law which the legislature determines to be inaccurate. Where such statutes are given any effect, the effect is *prospective only.* Any other result would make the legislature a court of last resort.

(Footnote omitted. Italics ours.) 1A C. Sands, *Statutory Construction* § 27.04, at 313 (4th ed. 1973). The Washington Supreme Court recognized this exception in *Johnson v. Morris, supra* at 925–26. The *Johnson* court did not decide whether the Legislature may retroactively clarify an existing statute when that clarification contravenes a prior state Supreme Court interpretation of the statute. However, citing the treatise quoted above, the court suggested that such legislative authority would create serious issues concerning the doctrine of separation of powers. *Johnson,* at 926. We

find this dicta persuasive. The Legislature may not, under the guise of clarification, overrule by legislative enactment a prior authoritative Supreme Court opinion construing a statute. However, direct confrontation of this issue may be avoided in this case if the 1983 enactment amends, rather than clarifies, an existing statute.[2] *Johnson,* at 926–27.

Under Washington law, a new legislative enactment is presumed to be an amendment rather than a clarification of existing law. *Johnson,* at 926. This presumption may be rebutted, however, if circumstances indicate that the Legislature intended to clarify an existing statute. *Johnson,* at 926. One well recognized indication of legislative intent to either clarify or amend is the existence or nonexistence of ambiguities in the original act. *Bowen v. Statewide City Employees Retirement Sys.,* 72 Wn.2d 397, 403, 433 P.2d 150 (1967). In general, legislative amendments change *unambiguous* statutes and legislative clarifications interpret *ambiguous* statutes. *Overton v. Economic Assistance Auth.,* 96 Wn.2d 552, 557, 637 P.2d 652 (1981); *Vita Food Prods., Inc. v. State,* 91 Wn.2d 132, 134, 587 P.2d 535 (1978); *see Bowen v. Statewide City Employees Retirement Sys., supra* at 403. In the present case, since the *Cheney* court held that the original discrimination statute contained no express or implied authority for granting the damage awards at issue, any ambiguities in the statute regarding such authority were resolved as of the date of *Cheney.* We conclude, therefore, that the 1983 enactment was intended to amend the original statute and provide an additional remedy which, according to *Cheney,* had not previously existed. This conclusion is supported by *Johnson v. Morris,*

---

[2]Separation of powers problems arise when the Legislature attempts to perform a judicial function. The function of a legislature is to make laws, not to construe them. Nor can the Legislature construe the intent of other legislatures. The latter functions are primarily judicial. Thus, legislative clarifications construing or interpreting existing statutes are unconstitutional when they contravene prior judicial interpretations of a statute. However, the Legislature is empowered to change or amend existing laws and may, in certain situations, apply such amendments retroactively.

*supra,* and *Fairley v. Department of Labor & Indus.,* 29 Wn. App. 477, 483, 627 P.2d 961, *review denied,* 95 Wn.2d 1032 (1981).

The *Fairley* court considered whether a subsequent legislative enactment defining a term in the original statute could be applied retroactively under the "clarification" rule. The subsequent enactment stated that the Legislature intended to "clarify" the original statute and that the Legislature had "continuously" intended to define the term as defined in the subsequent enactment. *Fairley,* at 482–83. Nevertheless, the court rejected the "clarification" analysis, stating:

> In [*Standing v. Department of Labor & Indus.,* 92 Wn.2d 463, 472, 598 P.2d 725 (1979)], it was noted that the legislature "failed to provide either a definition or examples of those kinds of benefits intended to fall within the rubric of the term ['public insurance]." In construing the term, the court declared the legislative intent at the time of enactment. After *Standing,* a subsequent legislature in 1980 defined "public insurance" to include social security benefits. It is evident the change came about as a result of *Standing.* The 1980 enactment must, then, necessarily be an amendment to the original Act and has prospective effect only.

(Citations omitted.) *Fairley,* at 484. The *Fairley* and *Johnson* opinions indicate that legislative enactments which respond to judicial interpretations of a prior statute, and which materially and affirmatively change that prior statute, are not "clarifications" of original legislative intent. Rather, such enactments are amendments to the statute itself. Since the 1983 Legislature's response to *Cheney* was to add a remedy, rather than to clarify prior intent, we think the 1983 enactment at issue in the present case amends, rather than clarifies, the original statute.

As an amendment the 1983 enactment is presumed to operate prospectively. *Painting & Decorating Contractors of Am., Inc. v. Ellensburg Sch. Dist.,* 96 Wn.2d 806, 813, 638 P.2d 1220 (1982). However, this presumption is reversed to favor retroactive application if the enactment

"is remedial and concerns procedure or forms of remedies
. . ." *Agency Budget Corp. v. Washington Ins. Guar. Ass'n,*
93 Wn.2d 416, 425, 610 P.2d 361 (1980); *Miebach v. Cola-surdo,* 102 Wn.2d 170, 180, 685 P.2d 1074 (1984). "A statute
is remedial when it relates to practice, procedure, or reme-dies and does not affect a substantive or vested right."
*Miebach,* at 180. Clearly, companies such as Marine Power
have no vested right to discriminate against their employ-ees. *See Koger v. Ball,* 497 F.2d 702, 706 (4th Cir. 1974);
*State Comm'n on Human Relations v. Amecom Div. of
Litton Sys., Inc.,* 278 Md. 120, 360 A.2d 1, 4–5 (1976). Fur-thermore, a close reading of the statute[3] and the amend-ment indicates that the new section is remedial because it
creates a supplemental remedy for enforcement of a preex-isting right.[4] *Haddenham v. State,* 87 Wn.2d 145, 148, 550
P.2d 9 (1976). The 1983 amendment allows "damages" for
humiliation and suffering, and these "damages," though
limited to $1,000, are clearly a *remedy* intended to com-pensate the injured party. *See State Comm'n on Human
Relations v. Amecom Div. of Litton Sys., Inc., supra* at 125

---

[3]The statute makes a broad range of remedies available to the Commission to
remedy wrongs once they have been found to exist. In *Human Rights Comm'n v.
Cheney Sch. Dist. 30,* 97 Wn.2d 118, 641 P.2d 163 (1982), the Washington
Supreme Court referred to RCW 49.60.250(5) as an "enumeration of *remedies
. . .* appropriate to eliminate and prevent discrimination, . . ." (Italics ours.)
*Cheney,* at 126. The pertinent section of the statute states:

> (5) If, upon all the evidence, the administrative law judge finds that the
> respondent has engaged in any unfair practice, the administrative law judge
> shall state findings of fact and shall issue and file with the commission and
> cause to be served on such respondent an order requiring such respondent to
> cease and desist from such unfair practice and to take such affirmative action,
> including, (but not limited to) hiring, reinstatement or upgrading of employ-ees, with or without back pay, an admission or restoration to full membership
> rights in any respondent organization, or to take such other action as, in the
> judgment of the administrative law judge, will effectuate the purposes of this
> chapter, including action that could be ordered by a court, except that dam-ages for humiliation and mental suffering shall not exceed one thousand dol-lars, and including a requirement for report of the matter on compliance.

(Amendatory language underlined.) RCW 49.60.250(5) (as amended by Laws of
1983, ch. 293, § 1, p. 1422).

[4]The "right to be free from discrimination" is declared in RCW 49.60.030.

(court suggesting that legislative amendment authorizing administrative award of back pay for employer discrimination would "likely . . . have been deemed merely remedial in nature and thus entitled to retroactive effect."); *Jones v. Department of Human Resources,* 44 N.C. App. 116, 260 S.E.2d 654, 660 (1979) (state employment discrimination statute is remedial).

Other considerations favor retroactive application of the 1983 amendment. First, retroactive application of the amendment would further the remedial purposes of the statute and the amendment. *Macumber v. Shafer,* 96 Wn.2d 568, 570, 637 P.2d 645 (1981). The purposes section of the statute indicates that the remedies in subsection 5 are intended to prevent and eliminate discrimination.[5] One way to insure the elimination and prevention of discrimination is to erase its effects by providing compensation for the victims of discrimination. In this sense, retroactive application of the amendment at issue would further the general purposes of the statute and the amendment by providing an additional tool for preventing and eliminating discrimination. Second, anti–discrimination statutes are enacted as a matter of public policy in the interest of humanity "and should be liberally construed in order that

---

[5]RCW 49.60.010 provides:

"Purpose of chapter. This chapter shall be known as the 'law against discrimination'. It is an exercise of the police power of the state for the protection of the public welfare, health, and peace of the people of this state, and in fulfillment of the provisions of the Constitution of this state concerning civil rights. The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state. *A state agency is herein created with powers with respect to elimination and prevention of discrimination in employment, in credit and insurance transactions, in places of public resort, accommodation, or amusement, and in real property transactions because of race, creed, color, national origin, sex, marital status, age, or the presence of any sensory, mental, or physical handicap*; and the board established hereunder is hereby given general jurisdiction and power for such purposes." (Italics ours.)

their beneficent objectives may be realized to the fullest extent possible." (Footnote omitted.) 3 C. Sands, *Statutory Construction* § 72.05, at 392 (4th ed. 1973); *cf. Macumber v. Shafer, supra* at 570.[6]

█ Finally, the relevant legislative history indicates that the Legislature intended retroactive operation of the 1983 amendment.[7] During the colloquy on the House floor, the bill's sponsor, Mr. Locke, was involved in the following discussion:

> Mr. McMullen: "Representative Locke, I notice that the Senate deleted section 2 of the version which was originally passed by the House. Is that because this bill, if enacted, is only to have prospective effect?"
>
> Mr. Locke: "No, Representative McMullen. That section was deleted because the bill is essentially procedural and clarifies the original intent of the legislature and, therefore, would apply retroactively. Section 2 was considered unnecessary. I've confirmed this with the members of the Senate Judiciary Committee who made the motion to delete section 2."

House Journal, 48th Legislature (1983), at 1571. As the bill's prime sponsor, Representative Locke may be

> expected to be particularly well informed about [the bill's] purpose, meaning, and intended effect. In recognition of this reality of legislative practice, courts give consideration to statements made by a bill's sponsor on grounds similar to those relied on to support the use of statements by the committeeman in charge of the bill.

(Footnotes omitted.) 2A C. Sands, *Statutory Construction*

---

[6]The statute at issue here expressly directs that "[t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020.

[7]It is not necessary that a statute expressly state that it is intended to operate retrospectively if such an intention can be obtained by viewing its purpose and the method of its enactment. *Pape v. Department of Labor & Indus.,* 43 Wn.2d 736, 741, 264 P.2d 241 (1953). In the instant case, the Senate committee's deletion of statutory language providing for retroactive operation was clearly part of the "method of enactment." To the extent that the colloquy quoted above explains the reasons for the deletion, we think it also may be considered as part of the Legislature's "method of enactment."

§ 48.15, at 221–22 (4th ed. 1973). *See International Paper Co. v. Department of Rev.,* 92 Wn.2d 277, 283–84, 595 P.2d 1310 (1979) (Rosellini, J., dissenting); *State v. Zuanich,* 92 Wn.2d 61, 79–83, 593 P.2d 1314 (1979) (Stafford, J., dissenting). *See generally* Comment, *Legislative History in Washington,* 7 U. Puget Sound L. Rev. 571 (1984). Though Representative Locke's statement is not conclusive as to the Legislature's intent,[8] we think it supports a retroactive application of the amendment.

■■ Thus, having concluded that the relevant interpretive factors support a retroactive application of the amendment,[9] we must next decide whether "retroactive" application includes cases pending on appeal. In general, where a controlling law changes between the entering of judgment below and consideration of the matter on appeal, the appellate court should apply the new or altered law, especially where no vested rights are involved and the Legislature intended retroactive application. 5 Am. Jur. 2d *Appeal and Error* § 729 (1964); *T & R Joint Venture v. Office of Planning & Zoning,* 47 Md. App. 395, 424 A.2d 384, 389–91 (1980); *Bradley v. School Bd.,* 416 U.S. 696, 40

---

[8]We note that while Representative Locke's statement regarding the intent of the Senate committee evidences an intent to apply the amendment retroactively, the reasons given for such application do not support retroactivity. The statute is not "procedural," and as noted earlier, it amends rather than clarifies the original statute. On the contrary, it is the remedial nature of the amendment which supports retroactivity.

However, since the remedial nature of the enactment gives rise to a presumption of retroactivity, the legislative history is actually significant here only if it tends to rebut the presumption of retroactivity. In this regard, we find nothing in the amendment or the legislative history supporting a reversal of the presumption.

[9]This result does not violate the separation of powers doctrine. The Legislature is clearly empowered to pass remedial (or procedural) legislation, and retroactive application of such legislation does not usurp a judicial function. *See Matviuw v. Johnson,* 111 Ill. App. 3d 629, 444 N.E.2d 606, 608–09 (1982) (procedural statute); *cf. Schwarzkopf v. Sac Cy. Bd. of Supervisors,* 341 N.W.2d 1, 6–8 (Iowa 1983) (curative enactment effectively nullifying appellate court interpretations of statute did not violate separation of powers because it changed, rather than construed, the existing statute).

L. Ed. 2d 476, 94 S. Ct. 2006 (1974); *see also Brooks v. Wainwright,* 439 F. Supp. 1335 (M.D. Fla. 1977) (citing Florida cases). Though this principle is relatively undeveloped in Washington, in our opinion it would be anomalous for an appellate court to apply an obsolete law where no vested right or contrary legislative intent is disturbed by applying a more current law. *T & R Joint Venture,* 424 A.2d at 389. In this regard, the United States Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Bd.,* 416 U.S. at 711. No vested or constitutional rights are disturbed by application of the 1983 amendment to this case, and we think the impact of the legislative change on the parties' rights is not manifestly unjust. Also, retroactive operation does not contravene the Legislature's intent. On the contrary, the relevant legislative history suggests that retroactive application is precisely what the Legislature intended. The Commission argues, however, that while the 1983 Legislature intended to retroactively apply the authorization of damage awards, they did not intend retroactive application of the $1,000 damage limitation to pending cases. We find no indication of such intention in the statute.

█ We also disagree with the Commission's contention that the 1983 amendment allows a $1,000 award for each unfair practice. RCW 49.60.250(5) states that damages "*for humiliation and mental suffering* shall not exceed one thousand dollars, . . ." (Italics ours.) We think this language plainly limits the total recovery, regardless of how many unfair discriminatory practices are alleged in a complaint.

Given our disposition of the preceding issues, we need not address in detail the Commission's contention that an administrative appeal may not be resolved by use of summary judgment procedures. We have already pointed out that a fully detailed record would not be of assistance in resolving the controlling issues in this litigation. The dis-

positive issues were solely questions of law, and appellants had a full opportunity to develop those questions before the trial court. While we agree that not all administrative appeals lend themselves to summary disposition, this one clearly does. *See* 6 J. Moore, *Federal Practice* ¶ 56.17(3) (1982).

For the reasons stated herein, the judgment of the trial court was correct with respect to the interpretation of *Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 641 P.2d 163 (1982) and the vacation of the hearing tribunal's award of $7,500. However, since we find the 1983 amendment applicable here, the order of partial summary judgment is reversed and the cause remanded for entry of a $1,000 damage award in favor of Mr. Shah.

CORBETT, C.J., and WILLIAMS, J., concur.