[No. 28146-5-II. Division Two. May 25, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERTA J. ELMORE, *Appellant*.

748

*Eric Broman* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *John C. Hillman, Deputy*, for respondent.

ARMSTRONG, J. — Roberta J. Elmore appeals her convictions for first degree felony murder, second degree robbery, first degree burglary, first degree kidnapping, second degree assault, and conspiracy to commit second degree robbery. She argues that the trial court violated her due process rights when it dismissed a juror who, although critical of the law, may have also refused to convict because he believed the defendant, not the State's witnesses. Because the record discloses a reasonable possibility that the dismissed juror, even if critical of the law also questioned the sufficiency of the State's evidence, we reverse and remand for a new trial.

## FACTS

Roberta J. Elmore worked as an escort for a company called April's Escorts. On December 4, 1996, she was hired to provide company and sexual services for Dennis Robertson at Robertson's home.

Robertson is a quadriplegic with cerebral palsy. He shared a home with two other cerebral palsy patients. All three men required 24-hour care. At that time, one of the caregivers was Scott Clayclamp from Northwest Services.

When Elmore arrived at Robertson's home on December 4, 1996, she requested payment. She saw the caretaker remove $160 from a small safe in Robertson's bedroom. Elmore took the money, but she refused to provide services to Robertson. She then telephoned the escort service and

argued with them over the phone. Without refunding Robertson's money, she angrily left the house.

On December 10, 1996, two men and a woman entered Robertson's home, took a wallet, some checks, and a small amount of cash. One of the men shot and killed Clayclamp during the robbery. The State presented evidence that Elmore initiated and planned the robbery.

The State charged Elmore with (1) first degree felony murder, (2) first degree burglary, (3) first degree kidnapping, (4) second degree assault, and (5) conspiracy to commit first degree robbery.

The trial began September 17, 2001, and the jury began deliberating on October 10, 2001. On October 12, 2001, juror 5 (the presiding juror) and juror 12 independently sent notes to the court. Juror 5 stated,

> Your Honor: As the presiding juror, I feel compelled to ask your assistance. We have a juror on the panel who has made statements which lead me to believe he was predisposed to <u>not</u> follow the instructions given by you or to follow the law contained in those instruction[s].
>
> Prior to adjourning on Thursday, this juror said[,] "I don't care what the judge said. The law is shit and I won't convict anyone based on what the law says."
>
> This juror has disregarded every witness statement regarding the defendant as credible.

Ex. 129.

Juror 12 wrote,

> Jurrer [sic] # 8
>
> I don't care what law says
>
> Will not lissen [sic] to deliberation
>
> Is
>
>> Nuts
>>
>> Criminal
>>
>> Related
>>
>> Or all of above
>
> From # 12

Ex. 128.

Outside the presence of any other juror, the trial court questioned jurors 5 and 12. Each verified his note and said his statements were true. Juror 12 told the trial court that juror 8 refused to participate in deliberations. When the jury would deliberate, juror 8 would walk around, get something to eat, and "kind of ignore the whole process." Report of Proceeding (RP) at 1167.

The State asked the trial court to excuse juror 8. The defense objected. After considerable discussion with the attorneys, the trial court decided to question juror 8.

Again outside the presence of other jurors, juror 8 denied telling the other jurors that he did not care what the law said, what the judge said, that "the law was shit," and that he would not convict anyone based on "what the law says." RP at 1182-83. He admitted telling the other jurors "it does not matter what this paper says," but he explained:

> I said that it does not matter what this paper says, it matters if we believe—on what the witnesses have to say, if we believe the witnesses are credible. If we believe the witnesses are credible, then we vote one way. But if we do not believe what the witnesses say, then we are obligated to vote the other way. And what's in the thing doesn't mandate how we have to vote. It's what we believe the testimony—you know, is the testimony credible?

RP at 1183.

The trial court then ruled that juror 8's "own statements are sufficient to show that he has manifested unfitness by reason of bias or prejudice with respect to the instructions on the law as a whole in this matter." RP at 1186. The trial court excused juror 8 from the jury over the defense objection.

Later in a written ruling, the trial court found that juror 8 was disqualified because he refused to participate in deliberations at times and refused to follow the law. It also found that the written and verbal statements of jurors 5 and 12 were credible. It concluded that juror 8 was unfit "by

reason of bias and prejudice and by reason of conduct incompatible with proper and efficient jury service." Clerk's Papers (CP) at 322-23. Finally, the court found that juror 8 was not disqualified because of any valid disagreements with other jurors, including disagreements regarding the credibility of witnesses.

The trial court seated an alternate juror and ordered deliberations to begin anew. On October 16, 2001, the jury found Elmore guilty of (1) first degree felony murder; (2) second degree robbery; (3) first degree burglary; (4) first degree kidnapping; (5) intent to facilitate first degree robbery, second degree robbery, and first degree burglary; (6) second degree assault; and (7) conspiracy to commit second degree robbery.

## ANALYSIS

Elmore argues that the court erred by even inquiring into the allegations of juror 8's misconduct because the notes from jurors 5 and 12 were ambiguous as to whether juror 8 was refusing to deliberate and follow the law or was simply disagreeing with the other jurors as to who was credible. Elmore relies on *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997); *United States v. Brown*, 823 F.2d 591 (D.C. Cir. 1987); *United States v. Symington*, 195 F.3d 1080 (9th Cir. 1999); and *Garcia v. People*, 997 P.2d 1 (Colo. 2000).

In *Brown*, a juror asked to be discharged. *Brown*, 823 F.2d at 594. The judge granted the request after the juror explained that he could not "go along" with the law because of "the way it's written and the way the evidence has been presented." *Brown*, 823 F.2d at 594. On appeal, the court first cautioned that, "a court may not delve deeply into a juror's motivations because it may not intrude on the secrecy of the jury's deliberations." *Brown*, 823 F.2d at 596. And the record was ambiguous as to whether the juror wanted to be excused because he could not follow the law or because he did not accept the government's evidence. Given

the ambiguity and the trial court's limited authority to intrude into the jury's deliberations, the court held that if the record discloses "any possibility that the request to discharge stems from the juror's view of the sufficiency of the government's evidence, the court must deny the request." *Brown*, 823 F.2d at 596. Accordingly, the court reversed the convictions. *Brown*, 823 F.2d at 600.

In *Thomas*, one juror complained during deliberations that the jury would not be likely to reach a verdict because another juror had a " 'predisposed disposition.' " *Thomas*, 116 F.3d at 611. The court interviewed each juror; at least five reported that the juror "was unyieldingly in favor of acquittal for all of the defendants." *Thomas*, 116 F.3d at 611. Some jurors reported that the holdout juror wanted to acquit because the defendants "were his 'people,' " the defendants were good people, drug dealing was commonplace, and the defendants dealt in drugs because of economic necessity. *Thomas*, 116 F.3d at 611. But several jurors said the holdout discussed the evidence and said he thought the prosecution's testimony was insufficient and unreliable. *Thomas*, 116 F.3d at 611. And the holdout juror said he was simply looking for " 'substantive evidence' " establishing guilt. *Thomas*, 116 F.3d at 611. The Court of Appeals followed *Brown*, holding that the trial judge had committed reversible error in dismissing the juror because the record raised the possibility that the juror was simply not persuaded by the government's case. *Thomas*, 116 F.3d at 623-24. Again the court emphasized the trial court's limited authority to investigate alleged juror misconduct during deliberations:

> The mental processes of a deliberating juror with respect to the merits of the case at hand must remain largely beyond examination and second-guessing, shielded from scrutiny by the court as much as from the eyes and ears of the parties and the public. Were a district judge permitted to conduct intrusive inquiries into—and make extensive findings of fact concerning—the reasoning behind a juror's view of the case, or the particulars of a juror's (likely imperfect) understanding or

interpretation of the law . . . this would not only seriously breach the principle of the secrecy of jury deliberations, but it would invite trial judges to second-guess and influence the work of the jury.

*Thomas*, 116 F.3d at 620.

In *Symington*, the Ninth Circuit followed *Brown* with one modification. The trial court dismissed a juror who "appeared confused and unfocused." *Symington*, 195 F.3d at 1083. After questioning each juror, the court found that the holdout juror was " 'unwilling or unable to deliberate.' " *Symington*, 195 F.3d at 1083-84. On appeal, the defendant argued that the dismissal violated his Sixth Amendment right to an impartial jury (the defendants in *Brown* and *Thomas* claimed Sixth Amendment violations of their rights to unanimous juries). The Ninth Circuit reversed the defendant's convictions because there was "considerable evidence to suggest that the other jurors' frustrations with her derived primarily from the fact that she held a position opposite to theirs on the merits of the case." *Symington*, 195 F.3d at 1088. But the Ninth Circuit was unwilling to adopt *Brown*'s "any possibility" test. Rather, the court held that "if the record evidence discloses any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror." *Symington*, 195 F.3d at 1087. Again the court emphasized the trial court's narrow authority to investigate alleged juror misconduct during deliberations: "In such cases a trial court lacks the investigative power that, in the typical case, puts it in the 'best position to evaluate the jury's ability to deliberate.' " *Symington*, 195 F.3d at 1086 (quoting *United States v. Beard*, 161 F.3d 1190, 1194 (9th Cir. 1998)).

State courts have also been cautious about allowing a trial court to find juror misconduct during deliberations. In *Garcia*, the Colorado Supreme Court reversed the defendant's conviction, finding that the trial court had impermissibly invaded jury deliberations in questioning the jury foreperson and the holdout juror about a report that the

juror refused to follow his oath or the instructions of the court. *Garcia*, 997 P.2d 1. But the court focused its concern on "a trial court removing a deliberating juror in a manner that appears to facilitate the rendering of a guilty verdict" because "[w]henever it appears that a jury may be reconstituted in order to reach a particular result, the guarantee of a fair and impartial jury is meaningless to a defendant and creates unwarranted mistrust and suspicion among members of the public." *Garcia*, 997 P.2d at 8.

In *People v. Cleveland*, 25 Cal. 4th 466, 21 P.3d 1225, 106 Cal. Rptr. 2d 313 (2001), the jury asked to have one juror replaced during deliberations because he was unwilling to apply the law and did not " 'feel that there [was] a valid charge.' " *Cleveland*, 25 Cal. 4th at 470. But he also questioned whether there was any evidence to support the charge. *Cleveland*, 25 Cal. 4th at 470. The Supreme Court held that the trial court erred in excusing the juror because the record did not establish as a " 'demonstrable reality' " the juror's refusal to deliberate. *Cleveland*, 25 Cal. 4th at 485. And the California court also stressed the need to assure " 'the privacy of jury deliberations by foreclosing intrusive inquiry into the sanctity of jurors' thought processes.' " *Cleveland*, 25 Cal. 4th at 475. The court reasoned that:

> Many of the policy considerations underlying the rule prohibiting post-verdict inquiries into the jurors' mental processes apply even more strongly when such inquiries are conducted during deliberations. Jurors may be particularly reluctant to express themselves freely in the jury room if their mental processes are subject to immediate judicial scrutiny. The very act of questioning deliberating jurors about the content of their deliberations could affect those deliberations.

*Cleveland*, 25 Cal. 4th at 476.

Elmore is entitled to a trial by a fair and impartial jury. U.S. Const. amends. VI, XIV § 1; Wash. Const. art. I, §§ 3, 21, 22; *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). "When a trial judge's ruling implicates either selection or management of the jury or

trial, the reviewing court must determine whether the judge's decision affects the defendant's due process right to a fair trial." *State v. Latham*, 100 Wn.2d 59, 66, 667 P.2d 56 (1983) (citing *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)). Included in the promise of a fair and impartial jury is the promise that a holdout juror will not be excused for failing to deliberate or follow the law where there is some evidence that the juror simply disagrees with other jurors about the merits of the State's case. *See Garcia*, 997 P.2d at 8, *Brown*, 823 F.2d at 596, *Symington*, 195 F.3d at 1087. We agree with the Colorado court that "[w]henever it appears that a jury may be reconstituted in order to reach a particular result, the guarantee of a fair and impartial jury is meaningless to a defendant and creates unwarranted mistrust and suspicion among members of the public." *Garcia*, 997 P.2d at 8.

■ And we agree with *Symington* that where the record shows any reasonable possibility that the impetus for a juror's dismissal stems from his views on the merits of the case, the dismissal is error. Here, the record shows such a reasonable possibility; it also demonstrates that the trial judge improperly intruded into jury deliberations.

The foreperson's first note reported his view that juror 8 was not willing to follow the court's instructions. It also reported juror 8's comments about the law. But the note concluded that juror 8 "has disregarded every witness statement regarding the defendant as credible." Ex. 129. Thus, at best, the note gave conflicting reasons for juror 8's conflict with the other jurors. It could have been because juror 8 refused to follow the law or it could have been because he alone believed the defendant, not the State's witnesses.

Juror 12's note contained the same ambiguity. He reported that juror 8 did not care "what [the] law says" but also characterized juror 8 as "nuts—criminal—related—or all of above." Ex. 128. The latter descriptions suggest not that juror 8 was unwilling to follow the law but that he took a different view of the evidence, apparently with consider-

able vigor of the case, siding with the defendant, not the State.

Finally, juror 8 explained his comments about the instructions: that they did not require a conviction if he believed the defendant and not the State's witnesses.

This record amply demonstrates that the jurors disagreed at least in part because of different views of the merits of the case. The court's inquiry should have ended at this point. By finding that the foreperson and juror 12 were credible and juror 8 was not, the court improperly intruded into the jury deliberations, becoming in essence a thirteenth and presiding juror to rule on what the jurors said during deliberation. And this sanctuary the court may not enter, at least for the purpose of ruling on conflicting reports about the jurors' discussions. *Thomas*, 116 F.3d at 620.

■■ But the State argues that our standard of review is abuse of discretion and we should defer to the trial court's finding that juror 8 was not excused "because of any valid disagreement he may have had with other jurors." CP at 65. The State relies on *State v. Jorden*, 103 Wn. App. 221, 11 P.3d 866 (2000), where we upheld the trial court's dismissal of a juror without holding a hearing. In *Jorden*, the trial judge dismissed a juror who had apparently been sleeping during trial testimony. The State reported witnessing the juror's conduct and the trial judge also saw it. In affirming the dismissal, we applied an abuse of discretion standard. *Jorden*, 103 Wn. App. at 226. Because the *Jorden* juror was not excused during deliberations for statements she made during deliberations, we did not face the constitutional questions at issue here. In deciding whether Elmore was denied her constitutional rights to a fair and impartial jury, we do not apply an abuse of discretion standard. Rather, "[w]e review claims of manifest constitutional error de novo." *State v. Stanley*, 120 Wn. App. 312, 314, 85 P.3d 395, 396 (2004) (citations omitted). And "[w]hether a trial court violates a defendant's Sixth Amendment right to a jury trial by excusing a juror for good cause and replacing that juror

with an alternate is a question of law which we review de novo." *Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997).

■ The State also argues that the federal cases do not apply because of differences between the federal rules of civil procedure and the state rules. Specifically, at the time of the federal decisions, the federal rules did not provide for alternate jurors. Thus, if the trial judge excused a juror, the jury continued with only 11 members. But our state rules allow alternate jurors. Thus, if the judge excuses a juror, an alternate steps in and the defendant is still guaranteed a unanimous 12-person verdict. We disagree for several reasons.

First, although *Brown* and *Thomas* framed the issue as the need for a unanimous verdict, in *Symington*, the defendant argued that dismissing the juror violated his right to an impartial jury. Moreover, dismissing a deliberating juror implicates broader constitutional problems than a unanimous 12-person jury. These include the guaranty that jury deliberations will remain secret and the guaranty that a juror will not be excused "in a manner that appears to facilitate the rendering of a guilty verdict." *Garcia*, 997 P.2d at 8. Accordingly, we reject the State's argument that we should not follow the federal cases because of procedural differences.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, C.J., and BRIDGEWATER, J., concur.

Review granted at 153 Wn.2d 1008 (2005).