[No. 34861-6-II. Division Two. March 9, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERTA J. ELMORE, *Appellant*.

---

888

*Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney,* and *Michelle Hyer, Deputy,* for respondent.

¶1 ARMSTRONG, J. — Roberta J. Elmore appeals her convictions for first degree felony murder, first degree burglary, first degree kidnapping, second degree assault, and second degree conspiracy to commit robbery. She argues (1) an officer's improper opinion testimony that she was evasive and untruthful in giving a statement violated her right to a jury trial; (2) her conviction of burglary, the predicate crime for felony murder, merged with her conviction of felony murder; and (3) the restraint that formed the basis for her kidnapping conviction was incidental to other crimes and, thus, insufficient to support a separate kidnapping conviction. She also contends (4) the post-*Blakely*[1] legislative amendments to the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, do not apply to her pre-*Blakely* crimes; (5) the prosecution acted vindictively in amending the information after her two successful appeals; (6) the addition of aggravating factors to the amended information after her two previous appeals violated double jeopardy and the mandatory joinder rule; and (7) the sentencing court's findings of aggravating factors violated her right to a jury trial on the findings. The State argues that the law of the case doctrine precludes Elmore from raising issues she could have raised in a previous appeal but did not. After considering the merits of Elmore's issues, we find no error and, therefore, affirm.

## FACTS

### A. Factual Background

¶2 The relevant facts have been previously litigated:

In December 1996, Roberta Elmore was hired by an escort service. Elmore went on her first call to the home of Dennis Robertson, a quadriplegic man who shared his home with two other disabled gentlemen. But after a misunderstanding as to what was expected of her, Elmore left Robertson's home and the escort service forced Elmore to return Robertson's payment and fired her. Elmore expressed anger to various friends about

---

[1] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

the incident and reportedly enlisted Gordon Crockett and Thorsten Jerde to rob the Robertson residence, giving them details about the location of the safe she had seen in the bedroom and showing them where Robertson lived. In addition, Elmore reportedly gave Crockett and Jerde bullets for the gun that they planned to use during the robbery.

In the early morning hours of December 11, 1996, Crockett and Jerde enlisted two others to help with the robbery. After gaining entry to the house on a ruse, Crockett and Jerde entered Robertson's bedroom and Crockett ordered Scott Claycamp, Robertson's caregiver, to the floor. Jerde grabbed the safe and left the room. Crockett shot Claycamp in the back of the head and Claycamp died later that day.

*State v. Elmore*, 155 Wn.2d 758, 761-62, 123 P.3d 72 (2005) (*Elmore* II); *see also State v. Elmore*, 121 Wn. App. 747, 749-50, 90 P.3d 1110 (2004) (*Elmore* I).

¶3 The following additional details are important to the issues in this appeal: At 6:15 a.m., the morning of the burglary, Ernie Schaef, another caregiver, opened the door to a woman asking for directions. According to Schaef, he sensed something suspicious and tried to shut the door on the woman. Before Schaef could shut the door, a man forced his way inside, pulled out a revolver, and shoved Schaef to the ground, ordering him to remain there. Schaef continued to lie there as the man stood over him with a gun and the other accomplices searched for the safe. As soon as the people left, Schaef called the police.

## B. Procedural History

¶4 The State charged Elmore by second amended information with first degree felony murder (predicated on robbery in the first degree), first degree burglary, first degree kidnapping (predicated on robbery in the first degree), second degree assault, and first degree conspiracy to commit robbery. It charged all counts but conspiracy to commit robbery with firearm enhancements.

¶5 In 1997, following a plea agreement, the State filed a third amended information, charging Elmore with first

degree felony murder only. Elmore pleaded guilty and was sentenced to 400 months' confinement. Elmore appealed and we reversed the conviction, allowing Elmore to withdraw her guilty plea.

¶6 Elmore proceeded to trial in 2001, based on a fifth amended information, charging first degree felony murder (predicated on first degree robbery and/or second degree robbery and/or first degree burglary), first degree burglary under RCW 9A.52.020(1),[2] first degree kidnapping (predicated on first degree robbery and/or second degree robbery and/or first degree burglary), second degree assault, and first degree conspiracy to commit robbery, all of which included firearm enhancements. The jury found Elmore guilty of all charges except conspiracy to commit first degree robbery, which it reduced to the lesser included offense of conspiracy to commit second degree robbery. The trial court found aggravating circumstances supporting exceptional sentences for first degree murder and first degree burglary, resulting in 797 months' confinement. Elmore appealed for a second time, and we reversed and remanded for a new trial. *Elmore* I, 121 Wn. App. 747. The Washington Supreme Court affirmed our decision in 2005. *Elmore* II, 155 Wn.2d 758.

¶7 On remand in 2006, the State filed a sixth and then a seventh amended information. The case went to trial on the seventh amended information, which included the same base crimes as the fifth amended information (except for conspiracy to commit robbery, which the State charged in the second degree). The other differences between the fifth and seventh amended informations were (1) felony murder was predicated on robbery in the second degree and/or burglary in the first degree; (2) first degree burglary was charged in the alternative under RCW 9A.52.020(1)(a)

---

[2] RCW 9A.52.020(1) provides, "A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person."

(armed with a deadly weapon) or (b) (assaulting a person); (3) the felony murder, burglary, kidnapping, and conspiracy charges were aggravated by a "high degree of planning and/or sophistication"; (4) the burglary charge was aggravated because "the victim . . . was particularly vulnerable or incapable of resistance" and "the victim . . . was present in the residence when the crime was committed"; and (5) the conspiracy charge was aggravated by the fact that "the victim . . . was particularly vulnerable." Clerk's Papers (CP) at 386-90.

## C. The Second Trial (2006)

¶8 At the second trial, Lieutenant Adamson testified about his initial interview with Elmore, during which she denied participating in the robbery. The prosecutor asked about the interview process:

[PROSECUTION]: Did you at some point during the interview confront the Defendant with regards to being a suspect?

[LIEUTENANT ADAMSON]: Yes, I did.

[PROSECUTION]: And what were the circumstances of that occurring?

[LIEUTENANT ADAMSON]: We were at a point where the interview was going back and forth, and she was at points being evasive, being untruthful. I sensed deception, and I finally got to the point where I confronted her that I believed that she participated in the robbery, and that was based on the identification by Mr. Schaef.

IX Report of Proceedings (RP) at 687. Adamson also explained that he did not tape the interview because there were "a lot of . . . inconsistencies and evasiveness of the information that she was providing. . . ." IX RP at 688-89. Adamson confirmed, however, that Schaef's identification turned out to be incorrect. Adamson testified that, although he initially believed it was Elmore who had knocked on the residence door, it was in fact Carole Edwards. Defense counsel did not object during this questioning.

¶9 The trial court instructed the jurors that they were "the sole judges of the credibility of each witness" and were

"not bound" by the expert witnesses' opinions. CP at 416, 422. The jury convicted Elmore of all five counts with firearm enhancements. The jury also found as aggravating factors that the victim was vulnerable and present in the residence during the burglary; it rejected a finding that the crimes were committed with a high degree of planning or sophistication. The court again sentenced Elmore to 797 months' confinement.

## ANALYSIS

### I. LAW OF THE CASE DOCTRINE

¶10 As a threshold matter, the State contends the law of the case precludes our review of any issue Elmore could have raised in her previous appeals. Elmore counters that previous trial and appellate counsel were ineffective in not raising the issues and that to apply the law of the case doctrine would only perpetuate the claimed errors.

¶11 Under the "law of the case" doctrine, we may refuse to address issues that were raised or could have been raised in a prior appeal. *Folsom v. County of Spokane*, 111 Wn.2d 256, 263-64, 759 P.2d 1196 (1988); RAP 2.5(c)(2). We have discretion in applying the doctrine and will not do so if it would result in manifest injustice. *Folsom*, 111 Wn.2d at 264. There are at least two circumstances where we will not apply the doctrine: (1) where the prior decision was clearly erroneous and (2) where there has been an intervening change in controlling precedent between trial and appeal. *Roberson v. Perez*, 156 Wn.2d 33, 42, 123 P.3d 844 (2005). The Supreme Court has also refused to apply the doctrine after a de novo sentencing hearing, reasoning that to deny a defendant's challenge on the merits would deny him his rightful remedy and would not serve the ends of justice. *State v. Harrison*, 148 Wn.2d 550, 562-63, 61 P.3d 1104 (2003).

¶12 We are satisfied that we should exercise our discretion to reach the merits of Elmore's issues. As in *Harrison*,

to refuse review of Elmore's sentence would deny her a meaningful appeal. The law of the case doctrine promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues. *Harrison*, 148 Wn.2d at 562. Here, Elmore's first appeal dealt solely with whether the State had breached its plea agreement; the second appeal dealt solely with the trial court's dismissal of a recalcitrant juror. *See Elmore* I, 121 Wn. App. 747. We did not address any issue pertaining to the merits of Elmore's convictions or sentence. Thus, there are few, if any, settled issues and Elmore is entitled to a meaningful analysis of the merits of her issues.

## II. Opinion Testimony

¶13 Elmore argues that Lieutenant Adamson explicitly stated his opinion about her guilt and credibility in violation of her Sixth Amendment right to have a jury decide these issues.

¶14 The right to a jury trial contained in the Sixth Amendment to the United States Constitution and article I, section 21 of the Washington Constitution includes the right to have the jury be " 'the sole judge of the weight of the testimony . . . .' " *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995) (quoting *State v. Crotts*, 22 Wash. 245, 250-51, 60 P. 403 (1900)). Thus, no witness may express an opinion about the defendant's guilt or credibility because such evidence violates the defendant's constitutional right to an impartial fact finder. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

¶15 We will consider a claim of improper opinion testimony raised for the first time on appeal only if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *Kirkman*, 159 Wn.2d at 926. "Manifest error" requires a showing of actual and identifiable prejudice to the defendant's constitutional rights at trial. *Kirkman*, 159 Wn.2d at 926-27 (citing *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). In the case of improper opinion testimony, a defendant can show manifest constitutional

error only if the record contains "an explicit or almost explicit witness statement on an ultimate issue of fact." *Kirkman*, 159 Wn.2d at 938. We construe this exception narrowly in part because the decision not to object to such testimony may be tactical. *Kirkman*, 159 Wn.2d at 934-35. Important to whether opinion testimony prejudices a defendant is whether the trial court properly instructs jurors that they alone decide credibility issues. *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008) (citing *Kirkman*, 159 Wn.2d at 937).

¶16 Here, because Elmore did not object to the testimony at trial, she must demonstrate a manifest constitutional error. But even if we deem Adamson's comments to be explicit statements on Elmore's credibility, his testimony does not constitute a manifest error because Elmore has not shown actual prejudice.

¶17 In *Kirkman*, the Supreme Court rejected the defendant's claims of prejudice on the grounds that defense counsel had tactical reasons for not objecting and that the jury was instructed that they alone decide credibility issues. *Kirkman*, 159 Wn.2d at 937. Here too, the court instructed the jurors that they were "the sole judges of the credibility of the witnesses" and that they alone determine the credibility and weight of expert opinion testimony. CP at 416, 422; *see State v. Davenport*, 100 Wn.2d 757, 763-64, 675 P.2d 1213 (1984) (jurors are presumed to follow the court's instructions absent evidence proving the contrary). Moreover, defense counsel had a valid tactical reason for not objecting. Lieutenant Adamson testified that, based on another witness's identification, he believed that Elmore participated in the robbery and that he sensed deception when she denied her involvement during the interview. Although this was arguably an improper comment on her credibility, Adamson's subsequent admission—that the identification was incorrect—was in fact helpful to Elmore. *See Kirkman*, 159 Wn.2d at 937 (no actual prejudice when some of the opinion testimony was actually favorable to the defendant). Not only did his testimony affirm that Elmore,

at least to some extent, was truthful in her interview, it also served to undermine Adamson's credibility, given that he wrongly "sensed deception." Defense counsel had a tactical reason not to object to the testimony. Because Elmore has not shown actual prejudice, we will not review the error claimed for the first time on appeal.

## III. MERGER

¶18 Elmore next contends her burglary conviction should have merged with her first degree felony murder conviction at sentencing to avoid the Fifth Amendment's prohibition on double punishment.

¶19 Elmore failed to challenge her sentence at the proceedings below and must again show that the alleged error is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *McFarland*, 127 Wn.2d at 333-34. Violations of the merger doctrine are of constitutional magnitude because the unauthorized imposition of multiple punishments is contrary to the Fifth Amendment's guaranty against double jeopardy. *State v. Frohs*, 83 Wn. App. 803, 811 n.2, 924 P.2d 384 (1996). Elmore must also demonstrate identifiable prejudice by showing the claimed error rests on a plausible argument; accordingly, we review the merits of the issue. *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999).

¶20 The merger doctrine is a rule of statutory construction courts use to determine whether the legislature intended to authorize multiple punishments for a single act. *State v. Vladovic*, 99 Wn.2d 413, 420-21, 662 P.2d 853 (1983); *see also State v. Freeman*, 153 Wn.2d 765, 771-72, 108 P.3d 753 (2005). Under the doctrine, when a particular degree of crime requires proof of another crime, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. *See Freeman*, 153 Wn.2d at 772-73; *State v. Johnson*, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979). But multiple punishments for crimes that appear to merge will not violate the prohi-

bition on double jeopardy if the legislature expresses its intent to punish each crime separately. *State v. S.S.Y.*, 150 Wn. App. 325, 330, 207 P.3d 1273 (2009).

¶21 One exception to the merger doctrine is the burglary antimerger statute, which states, "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately." RCW 9A.52.050. The plain language of RCW 9A.52.050 shows that the legislature intended that crimes committed during a burglary do not merge when the defendant is convicted of both. *State v. Sweet*, 138 Wn.2d 466, 478, 980 P.2d 1223 (1999); *see also State v. Bonds*, 98 Wn.2d 1, 15, 653 P.2d 1024 (1982) (" '[T]he anti-merger statute is an express statement that the legislature intended to punish separately any other crime committed during the course of a burglary.' " (quoting *State v. Hoyt*, 29 Wn. App. 372, 377-78, 628 P.2d 515 (1981))); *State v. Michielli*, 132 Wn.2d 229, 237, 937 P.2d 587 (1997) (when the words in a statute are clear and unequivocal, a court must apply the statute as written). In *Sweet*, the Supreme Court held that, although the assault charged was also an element of first degree burglary, the unambiguous antimerger statute allowed the State to charge the two crimes separately and the trial court to punish them separately. *Sweet*, 138 Wn.2d at 479. Although no Washington court has explicitly held that the burglary antimerger statute allows for separate punishment when burglary is the predicate crime of the felony murder, under *Sweet*, the clear legislative intent behind the burglary antimerger statute compels such a result.[3] Accord-

---

[3] Other jurisdictions have reached similar results based on clear legislative intent. *See, e.g., State v. Contreras*, 118 Nev. 332, 337, 46 P.3d 661 (2002) (inappropriate to merge the predicate burglary conviction with felony murder conviction under the antimerger statute); *People v. Farley*, 46 Cal. 4th 1053, 1118-19, 210 P.3d 361, 96 Cal. Rptr. 3d 191 (2009) (merger doctrine does not apply to first degree felony murder in light of the legislature's clear intent); *Todd v. State*, 884 P.2d 668, 678-79 (Alaska 1994) (where the double jeopardy question hinges on legislative intent, a majority of courts have upheld separate punishment for felony murder and the predicate crime).

ingly, Elmore is unable to show prejudice sufficient to raise a manifest constitutional error.

IV. INCIDENTAL RESTRAINT DOCTRINE

¶22 Elmore contends her kidnapping conviction should be dismissed because the restraint used against Schaef was "completely incidental to the burglary and robbery of the home." Br. of Appellant at 34. Again, Elmore failed to argue this error below and must show a manifest error affecting a constitutional right. RAP 2.5(a)(3).

¶23 Evidence of restraint that is merely incidental to the commission of another crime is insufficient to support a kidnapping conviction. *State v. Saunders*, 120 Wn. App. 800, 817-18, 86 P.3d 232 (2004); *see also State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987) (where such conduct involved in the perpetration of a crime does not have an independent purpose or effect, it should be punished as an incident of the crime and not additionally as a separate crime). Although rooted in merger doctrine, courts reviewing kidnapping charges that are arguably merely incidental to another crime frequently borrow a sufficiency of the evidence analysis. *See Saunders*, 120 Wn. App. at 817. Thus, whether the kidnapping is incidental to the commission of other crimes is a fact-specific determination. *See State v. Green*, 94 Wn.2d 216, 225-27, 616 P.2d 628 (1980); *State v. Korum*, 120 Wn. App. 686, 707, 86 P.3d 166 (2004), *rev'd on other grounds*, 157 Wn.2d 614, 141 P.3d 13 (2007). In turn, the nature of the restraint determines whether the kidnapping will merge into a separate crime to avoid double jeopardy violations. *State v. Brett*, 126 Wn.2d 136, 174, 892 P.2d 29 (1995). Because the restraint used must be an integral part of the underlying crime, kidnapping is never incidental to a conviction for *conspiracy* to commit robbery, as conspiracy is generally completed before the actual robbery. Elmore must therefore show that the kidnapping was incidental to the burglary. *See Korum*, 120 Wn. App. at 705.

¶24 Elmore argues the facts in her case are similar to those in *Korum*, 120 Wn. App. 686: that the restraint of victims during home invasion robberies facilitated the robberies. In *Korum*, we found the kidnappings incidental to the robberies because (1) the restraint used was for the sole purpose of facilitating the robberies; (2) forcible restraint is inherent in armed robberies; (3) the restrained victims were not moved away from their homes; (4) the duration of the restraint was not substantially longer than the commission of the robberies; and (5) the restraint did not create danger independent of the danger posed by the armed robberies themselves. *Korum*, 120 Wn. App. at 707. Here, unlike in *Korum*, Elmore was convicted of conspiracy to commit robbery, not the actual robbery.

¶25 And Elmore has not shown that the kidnapping restraint was incidental to the burglary. First, restraint does not inhere in the crime of burglary.[4] The burglary was completed when Elmore's accomplices entered the victims' home with intent to commit a crime. *See State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992) (defendant's objective intent for burglary was completed when he broke into the residence armed with a deadly weapon). The restraint of Schaef was at most incidental to the armed robbery, which occurred after the accomplices had entered the home; it was not necessary to and did not facilitate their entry. *Cf. Korum*, 120 Wn. App. at 707 (restraining the victims occurred contemporaneously with the robberies); *see also Saunders*, 120 Wn. App. at 818 (restraint used was above and beyond that required or even typical in the commission of a rape). Moreover, the danger to Schaef from being restrained at gunpoint on the floor was significantly

---

[4] To find Elmore guilty of first degree kidnapping, the jury had to find that the defendant or an accomplice abducted Schaef with the intent to commit a felony (in this case, either robbery or burglary). RCW 9A.40.020(1)(b). "Abduct" means "to restrain a person by . . . secreting or holding [the person] in a place where that person is not likely to be found or . . . using or threatening to use deadly force." RCW 9A.40.010(2). A person is guilty of first degree burglary if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and is either armed with a deadly weapon or assaults any person while inside or in immediate flight therefrom. RCW 9A.52.020.

greater than the threat posed by the burglary, which again was completed when the accomplices entered the home. *Korum*, 120 Wn. App. at 707. Elmore has not shown that the kidnapping restraint was so incidental to the burglary that it could not support a separate conviction. Thus, she has again failed to demonstrate a manifest constitutional error.

## V. SEPARATION OF POWERS

¶26 Elmore next contends that because no constitutionally valid statute authorized the submission of aggravating factors to the jury, we must reverse and remand for resentencing within the standard range for each offense. Elmore reasons that under *State v. Pillatos*, 159 Wn.2d 459, 150 P.3d 1130 (2007), the exceptional sentencing scheme authorized by the 2005 amendments to the SRA does not apply to her *retrial*. She also argues that the 2007 amendments to the SRA, if applied, would violate the constitutional separation of powers doctrine because they clarify the law in contravention of the Supreme Court's interpretation of the statute.[5] Finally, Elmore claims the prosecution exceeded its authority by alleging the aggravating factors for all the charged crimes when, in her first trial, it alleged the

---

[5] In oral argument on November 30, 2009, defense counsel argued that the 2007 amendments could not be applied under *State v. Eggleston*, 164 Wn.2d 61, 187 P.3d 233 (2008). According to counsel, *Eggleston* held that the issue of retroactive applicability of the 2007 amendments cannot come before an appellate court where the statute was not applied at sentencing. Since Elmore was sentenced before the 2007 amendments were enacted, counsel maintains that the issue of the amendments' constitutionality is premature and not before this court. But in *Eggleston*, the trial court imposed, prior to *Blakely*, an exceptional sentence without a finding by the jury. *Eggleston*, 164 Wn.2d at 75. The Supreme Court declined to address the issue of the applicability of the post-*Blakely* amendments to the defendant's case because no jury had been empaneled and the court could only speculate as to whether the State would seek an exceptional sentence under the new statute if remanded. *Eggleston*, 164 Wn.2d at 76-77 (the court's jurisdiction over an issue cannot be invoked unless a justiciable controversy exists). *Eggleston* is easily distinguishable; here, the trial court imposed an exceptional sentence after the jury found certain aggravating factors beyond a reasonable doubt. The alleged error is not hypothetical and a justiciable controversy therefore exists. *Eggleston*, 164 Wn.2d at 76-77.

aggravating factors only in connection with felony murder and burglary.

A. Background

¶27 In 2004, the United States Supreme Court decided *Blakely*, holding that a criminal defendant has a constitutional right to have a jury determine beyond a reasonable doubt any aggravating fact that is used to impose a greater punishment than the standard range. 542 U.S. 296. In response to *Blakely*, the Washington Legislature enacted RCW 9.94A.537. LAWS OF 2005, ch. 68, § 4. The 2005 statute authorized a new procedure for juries to consider aggravating factors supporting an exceptional sentence. Former RCW 9.94A.537(2) (2005).

¶28 In 2007, the Washington Supreme Court confirmed its earlier decision in *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), that trial courts do not have inherent authority to empanel sentencing juries. *Pillatos*, 159 Wn.2d at 470. The court also held that under the 2005 statute's plain language, the amendments applied to criminal matters pending trial when the statute took effect, but not to cases where the trials had already begun or where the defendant had pleaded guilty before the statute's effective date. *Pillatos*, 159 Wn.2d at 470, 474. As a result of these decisions, the State had no procedure for applying the *Blakely*-required procedures to defendants who had pleaded guilty or been tried before the effective date of the 2005 "*Blakely* fix" legislation.

¶29 In response to *Pillatos*, in 2007, the legislature amended former RCW 9.94A.537 to express its intent that superior court judges have authority to empanel sentencing juries to find aggravating circumstances *in all cases* that come before the court, regardless of the date of the original trial or sentencing. LAWS OF 2007, ch. 205, § 1; *see also* RCW 9.94A.537(2).

B. Separation of Powers

¶30 A sentencing court's statutory authority under the SRA is a question of law, which we review de

novo. *State v. Murray*, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003). We also review constitutional challenges de novo. *State v. Jones*, 159 Wn.2d 231, 237, 149 P.3d 636 (2006).

¶31 The separation of powers doctrine preserves the constitutional division between the three branches of government, ensuring that the activity of one does not threaten or invade the prerogatives of another branch. *Carrick v. Locke*, 125 Wn.2d 129, 135, 882 P.2d 173 (1994) (quoting *Zylstra v. Piva*, 85 Wn.2d 743, 750, 539 P.2d 823 (1975)). Separation of powers issues arise when the legislature attempts to perform judicial functions. While it is the function of the legislature to set policy and to draft and enact laws, it is ultimately for the courts to construe the law. *Marine Power & Equip. Co. v. Human Rights Comm'n Hearing Tribunal*, 39 Wn. App. 609, 615 n.2, 694 P.2d 697 (1985). A fundamental rule of statutory construction is that once the highest court construes a statute, that construction operates as if it were originally written into the statute. *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 506, 198 P.3d 1021 (2009) (quoting *Johnson v. Morris*, 87 Wn.2d 922, 927, 557 P.2d 1299 (1976)). Thus, legislative clarifications construing or interpreting existing statutes are unconstitutional when they contravene prior judicial interpretations of a statute. *Marine Power*, 39 Wn. App. at 615 n.2.

¶32 A separation of powers conflict may be avoided, however, if the legislative intent was to amend, rather than clarify, an existing statute. *See Morris*, 87 Wn.2d at 926. We presume a new legislative enactment is an amendment rather than a clarification of existing law, a presumption that may be rebutted only if it is clear the legislature intended to interpret rather than change the law. *Morris*, 87 Wn.2d at 926. One indication of legislative intent to clarify exists when the statute itself is ambiguous; in contrast, legislative amendments generally change unambiguous statutes. *Marine Power*, 39 Wn. App. at 615. That the legislature adopts an amendment in response to a Supreme Court ruling does not alone render the amend-

ment a clarifying one. *State v. Ramirez*, 140 Wn. App. 278, 289, 165 P.3d 61 (2007); *see also Marine Power*, 39 Wn. App. at 616 (enactments that affirmatively change a court-interpreted statute are amendments, not clarifications).

¶33 Recently, in *State v. Mann*, 146 Wn. App. 349, 359-60, 189 P.3d 843 (2008), Division Three of this court held that former RCW 9.94A.537 was clear and unambiguous because " '*by its terms*, [it] applie[d] to all pending criminal matters where trials have not begun or pleas not yet [been] accepted.' " (Quoting *Pillatos*, 159 Wn.2d at 470.) Given the clear terms of the 2005 amendments, the court reasoned that the 2007 amendments presumptively changed the law rather than clarified it. *Mann*, 146 Wn. App. at 360. Accordingly, the court found that the defendant failed to demonstrate a separation of powers violation. *Mann*, 146 Wn. App. at 360.

¶34 We agree with the reasoning in *Mann* and hold that the 2007 amendments changed, rather than clarified, the statute. In *Pillatos*, the Supreme Court recognized the amended sentencing procedures of Laws of 2005, chapter 68, specifically stating that they applied to any case "prior to trial or entry of the guilty plea." *See Pillatos*, 159 Wn.2d at 470; *see also* former RCW 9.94A.537. Elmore argues that "prior to trial" is an ambiguous phrase that does not make clear whether the legislature intended "trial" to include a "retrial." Br. of Appellant at 42. But a court may not add words or clauses to an unambiguous statute when the legislature has not included the language. *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003). And the 2007 amendments did not seek to clarify any ambiguity as to what the legislature intended "trial" to mean. Rather, the 2007 amendments affirmatively changed the 2005 statutes so that *Blakely*'s procedural requirements apply to *all cases* before the court, not just those where the defendant had not pleaded guilty or been tried. Elmore has therefore failed to show that applying the 2007 amendments violates the

separation of powers doctrine,[6] and we conclude that the 2007 amendments apply. *Marine Power*, 39 Wn. App. at 620 (where controlling law changes between judgment below and appeal, the appellate court applies the new or altered law, especially where no vested rights are involved and the legislature intended retroactive application). Thus, the trial court had power to convene a jury to hear the State's alleged aggravating factors in Elmore's 2006 trial, regardless of whether we characterize it as a trial or retrial.

¶35 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PENOYAR, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 169 Wn.2d 1018 (2010).

---

[6] Because the 2007 amendments apply, we need not decide whether the 2005 amendments apply on remand.