FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8: 44

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45758-0-II |
| Respondent, | |
| v. | |
| RODNEY BRYSON, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Rodney Bryson appeals his convictions for assault in the third degree and assault in the fourth degree. He argues that the State presented insufficient evidence to prove beyond a reasonable doubt that his intent toward the intended victim transferred to another victim. Alternatively, Bryson argues that both his convictions for one count of assault in the third degree and one count of assault in the fourth degree should be reversed because his counsel was ineffective for failing to object to improper opinion testimony. In his statement of additional grounds, Bryson further asserts (1) ineffective assistance of counsel, (2) prosecutorial misconduct, (3) double jeopardy, (4) the trial court miscalculated his offender score, (5) he did not receive requested copies of the verbatim report of proceedings, (6) the State failed to timely file an information, and (7) one of the State's witnesses committed perjury. We affirm.

## FACTS

On July 5, 2013, Department of Corrections (DOC) Officer Nicholas Kiser observed Bryson attempting to pry the license plate from a DOC vehicle. Kiser confronted Bryson and also notified Grays Harbor dispatch of the situation. Following a confrontation between Bryson and Kiser, Officer Robert Green handcuffed Bryson and took him into custody. Officer Ronald Morella and Sergeant Keith Dale arrived to assist.

The officers led Bryson to a patrol car to conduct a frisk. Green and Morella conducted the frisk, while Kiser and Dale stood behind them. Bryson was agitated and verbally aggressive. Facing the patrol car, Bryson looked back over his shoulder three times. The third time he looked back, he spit. Bryson's saliva landed on Kiser's cheek, chin, and shirt. It also landed on Dale's cheek. The State charged Bryson with one count of custodial assault against Kiser and one count of assault in the third degree against Dale.

At a jury trial held on December 17, 2013, the State presented the above evidence through the testimony of Kiser, Dale, Green, and Morella. Kiser testified that Bryson's saliva landed on his cheek, chin, and shirt and that he found it offensive. Kiser also testified that Bryson was not coughing or choking at the time.

Green testified that Bryson's saliva went over his shoulder and he ducked to avoid being hit by it. During direct examination of Green, the State elicited the following testimony:

[STATE]: . . . Were you looking at [Bryson] when the spit happened?
. . . .
[STATE]: Were you looking at his face?
[GREEN]: Yes.
[STATE]: Okay. Is there any indication from his expression or anything that this was involuntary?
[GREEN]: No.
[STATE]: Okay. Was there any indication from his expression this was intentional?
[GREEN]: Yes.
[STATE]: Any doubt in your mind this was intentional?
[GREEN]: No.

Report of Proceedings (RP) at 31-32. Bryson's defense counsel did not object.

Dale testified that Bryson "spit in . . . Kiser's face and part of that hit [him] at the same time" on his cheek. RP at 65. During direct examination of Dale, the State elicited the following testimony:

[STATE]: . . . Was he . . . coughing . . . like this was some sort of involuntary expectoration?
[DALE]: No, he wasn't.
[STATE]: . . . [W]ere you looking at [Bryson's] face when he did it?
[DALE]: Pretty much, yes.
[STATE]: All right. Did this look like something that was intentional?
[DALE]: That's what it appeared to me.

RP at 65. Bryson's defense counsel did not object.

Bryson testified that he did not spit at Kiser, but rather his dental appliance pinched his lip and he attempted to fix it. Bryson claimed that he did not intentionally spit at Kiser, but if his saliva did land on Kiser or Dale, it was an accident. Bryson also testified that he has a chronic cough, but he doesn't remember coughing prior to or during the incident.

During closing argument, the State argued that Bryson acted intentionally to assault Kiser by spitting on him and, because his saliva also hit Dale, Bryson acted intentionally to assault Dale. Without objection, the trial court gave the following assault jury instruction:

> An assault is an intentional touching of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching is offensive if the touching would offend an ordinary person who is not unduly sensitive.

Clerk's Papers (CP) at 138 (Instr. 10). The trial court additionally instructed the jury, without objection, that "[i]f a person acts with intent to assault another, but the act harms a third person, the actor is also deemed to have acted with intent to assault the third person." CP at 138 (Instr. 11).

The jury found Bryson not guilty on the charge of custodial assault against Kiser, but guilty of the lesser included assault in the fourth degree. The jury found Bryson guilty of assault in the third degree against Dale. The trial court calculated Bryson's offender score as 6 and sentenced him to standard range sentence of 29 months in custody. Bryson appeals.

3

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Bryson argues that the transferred intent doctrine did not apply because Dale "did not suffer 'physical injury' or 'bodily harm.'"[1] Br. of Appellant at 11 (quoting RCW 9A.04.110(4)(a)). We hold that when viewed in the light most favorable to the State, sufficient evidence exists to prove beyond a reasonable doubt that Dale was harmed.

A. Standard of Review

"The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

B. Substantial Evidence Supports Bryson's Conviction for Assault in the Third Degree

Assault is a harmful or offensive touching regardless of whether any physical injury is done to the person. RCW 9A.36.031, .041; *State v. Humphries*, 21 Wn. App. 405, 409, 586 P.2d 130 (1978). Spitting can be an assault. *Humphries*, 21 Wn. App. at 408. Under the transferred intent doctrine, intent to assault one victim transfers to all victims who are harmed. *State v. Elmi*, 166 Wn.2d 209, 218, 207 P.3d 439 (2009); *see also* RCW 9A.36.011(1)(a). Once the State establishes

---

[1] Bryson does not argue that the State presented insufficient evidence to prove beyond a reasonable doubt that Bryson intended to assault Kiser, but only that Dale suffered no harm.

4

intent to assault the intended victim, the defendant's *mens rea* is transferred to any unintended victim. *Elmi*, 166 Wn.2d at 218.

The State's evidence established that Bryson intended to assault Kiser by spitting on him. Bryson spit at Kiser, the intended victim, and his saliva hit Kiser in the face. Bryson's saliva also landed on Dale's face, an unintended victim. When viewed in the light most favorable to the State, a rational trier of fact could find that an offensive touching occurred when Bryson's saliva made contact with Dale's face and he was harmed as a result. Because an offensive touching is an assault, sufficient evidence exists for a rational trial of fact to find beyond a reasonable doubt that Dale suffered harm from the spitting.

II.     INEFFECTIVE ASSISTANCE OF COUNSEL

Bryson argues that he received ineffective assistance of counsel based on trial counsel's failure to object to improper trial testimony by Green and Dale. Because Green's and Dale's testimony was correctly admitted, Bryson's counsel was not ineffective for failing to object to it.

A.     Standard of Review

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prove ineffective assistance of counsel, Bryson must show that (1) counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that (2) the deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. There is a strong presumption that defense counsel's performance was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To establish prejudice, Bryson must show a reasonable probability that the

deficient performance affected the outcome of the trial. *Thomas*, 109 Wn.2d at 226. Because Bryson bases his ineffective assistance of counsel claim on defense counsel's failure to object, he must show that the objection would have likely succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

B.     Bryson Did Not Receive Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 21 of the Washington Constitution guarantee the right to a jury trial. *State v. Elmore*, 154 Wn. App. 885, 897, 228 P.3d 760 (2010). The right to a jury trial includes the right to have the jury make an independent determination of the facts. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). As such, opinion testimony on the guilt or veracity of the defendant generally violates the right to a jury trial. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007); *Demery*, 144 Wn.2d at 759. But a witness does not give improper opinion testimony merely because the testimony expresses an opinion as to an ultimate issue of fact that the jury must decide. *Kirkman*, 159 Wn.2d at 929. "To determine whether statements are impermissible opinion testimony, a court will consider the circumstances of a case, including, '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *State v. King*, 167 Wn.2d 324, 332-33, 219 P.3d 642 (2009) (quoting *Kirkman*, 159 Wn.2d at 928) (internal punctuation omitted).

Here, Green and Dale did not testify as to Bryson's guilt. They provided testimony based on their observations of Bryson and his acts. Bryson relied on a defense that he did not intentionally spit at Kiser, but spit may have resulted from his trying to fix his dental appliance which pinched his lip. Bryson claimed if spit hit Kiser, it was accidental. Bryson also claimed that spit may have been the result of a chronic cough he had on the date of the incident even though

6

he did not remember coughing prior to or during the incident. Green and Dale did not testify as to whether Bryson intentionally assaulted Kiser. They opined whether, based on their observations, the spit could or could not have been consistent with Bryson's versions. Green's and Dale's testimony did not express an opinion on Bryson's guilt. *See State v. Jones*, 59 Wn. App. 744, 751, 801 P.2d 263 (1990).

Because Green's and Dale's testimony was not improper opinion testimony, Bryson has not demonstrated that an objection would have succeeded. *Gerdts*, 136 Wn. App. at 727. Therefore, Bryson cannot demonstrate that his counsel's performance was deficient. His ineffective assistance of counsel claim fails.

## III.    STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds (SAG), Bryson asserts (1) ineffective assistance of counsel, (2) prosecutorial misconduct, (3) double jeopardy, (4) the trial court miscalculated his offender score, (5) he did not receive requested copies of the verbatim report of proceedings, (6) the State failed to timely file an information, and (7) one of the State's witnesses committed perjury. We hold that Bryson's assertions lack merit.

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Bryson asserts that his trial counsel was ineffective for failing to present evidence of DNA analysis of the saliva on Kiser and Dale, as well as failure to present other evidence, including a drug store receipt and bank records. As discussed above, to prove ineffective assistance of counsel, Bryson must show that counsel's performance was deficient and that the deficient performance prejudiced him. *See Thomas*, 109 Wn.2d at 226. Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260

7

(2011). To rebut this presumption, Bryson bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33.

### 1. DNA Analysis

Bryson first asserts that his trial counsel was ineffective for failing to present DNA evidence of the saliva on Kiser and Dale. The record does not demonstrate that DNA evidence existed. Therefore, whether or not his trial counsel could not have presented such evidence is speculative and outside the record. Additionally, Bryson cannot demonstrate that his trial counsel's performance was deficient for failing to obtain DNA evidence. Multiple witnesses were present during the incident and saw only Bryson spit. No other person spit during the incident; thus, DNA analysis would not have been useful to Bryson's defense. Therefore, Bryson's trial counsel's performance was not deficient for failing to present or procure such evidence.

### 2. Failure to Present Other Evidence

Bryson next asserts that his trial counsel was ineffective for failing to present other evidence on his behalf, including a drug store receipt and bank records. Bryson fails to demonstrate the relevance of this evidence, thus he fails to establish that his counsel's performance was deficient for failing to present it.

### B. PROSECUTORIAL MISCONDUCT

Bryson asserts prosecutorial misconduct, but does not inform us of the nature and occurrence of the alleged errors, as required by RAP 10.10(c). Bryson does not identify any specific reason why the prosecutor committed misconduct. His assertion of error is too vague to allow this court to identify the issue and we do not reach it. *See State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012).

C. DOUBLE JEOPARDY

Bryson asserts that the trial court violated his right to be free from double jeopardy under the Washington Constitution by imposing two sentences under one cause number. We disagree because the trial court imposed one sentence for two separate convictions that are not the same in law or fact.

Double jeopardy violations are questions of law we review de novo. *State v. Womac*, 160 Wn.2d 643, 649, 160 P.3d 40 (2007). The federal and state constitutions prohibit being punished twice for the same crime. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; RAP 2.5(a)(3); *State v. Freeman*, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005). Multiple convictions whose sentences are served concurrently may still violate the rule against double jeopardy. *State v. Calle*, 125 Wn.2d 769, 774-75, 888 P.2d 155 (1995). Absent clear legislative intent to the contrary, two convictions constitute double jeopardy when the evidence required to support a conviction for one charge is also sufficient to support a conviction for the other charge, even if the more serious charge has additional elements. *See Freeman*, 153 Wn.2d at 777. Thus, two convictions constitute the same offense if they are the same in law and in fact. *Calle*, 125 Wn.2d at 777. If each conviction includes elements not included in the other, or requires proof of a fact that the other does not, the offenses are different. *Calle*, 125 Wn.2d at 777.

Here, the trial court imposed one sentence under one cause number for two separate convictions: assault in the fourth degree and assault in the third degree. Therefore, his claim fails. To the extent that Bryson is actually asserting that the convictions constitute the same offense, his claim fails. Bryson's convictions involve different victims which necessarily mean each conviction requires proof of a fact that the other does not. Thus, the offenses are different and the trial court did not violate Bryson's right to be free from double jeopardy.

9

D.    OFFENDER SCORE

Bryson asserts that the trial court miscalculated his offender score and that the trial court should have imposed a standard range sentence of 17-22 months.[2] He asserts that several of his prior class C felony convictions washed out and should not have been included in his offender score.

According to RCW 9.94A.525(2)(c), a class C felony is counted in an offender score if the offender had not spent five consecutive years in the community since release from confinement for a felony conviction without committing any crime that results in a conviction. In this case, Bryson was convicted of assault in the third degree, a class C felony, on June 10, 1991. He obtained six misdemeanor convictions before he was convicted of bail jumping, a class C felony, on May 29, 1996. Bryson was then convicted of custodial assault, a class C felony on June 9, 1997. Since that conviction, but before the convictions in the instant case, Bryson obtained 19 misdemeanor convictions and two felony convictions between 1997 and 2013. No more than two years elapsed between any of the convictions. Because each of Bryson's misdemeanors prevented washout, he did not spend five years in the community without being convicted of a crime; thus, the court properly used his class C felony convictions when it calculated his offender score.

---

[2] Bryson also asserts that the judgment and sentence under cause number 94-1-00137-2 is invalid. SAG at 1. However, this assertion is outside of the appellate record. On direct appeal, we do not address issues relying on facts outside the record. *McFarland*, 127 Wn.2d at 338 n.5.

E.     COPIES OF VERBATIM REPORT OF PROCEEDINGS

Bryson asserts that he did not receive requested copies of the verbatim report of proceedings of his bail hearing. A verbatim report of the bail hearing was not designated on appeal. The record demonstrates that a copy of the verbatim reports of proceedings that were designated on appeal was sent to Bryson on July 23, 2014. To the extent that Bryson argues facts outside of our record, we cannot consider the argument. *McFarland,* 127 Wn.2d at 338 n.5.

F.     CHARGES TIMELY FILED

Bryson asserts that the State failed to timely file charges against him following his arrest. An accused "shall not be detained in jail or subjected to conditions of release for more than 72 hours" unless an information or indictment is filed. CrR 3.2.1(f)(1). "[T]he 72 hour period shall not include any part of Saturdays, Sundays or holidays." CrR 3.2.1(f)(1). Although the record on appeal does not contain record of Bryson's arrest or probable cause determination, trial testimony establishes that law enforcement officers arrested Bryson sometime around 12:00 PM on Friday, July 5, 2013. RP at 28. The State charged Bryson by information filed at 10:50 AM on Tuesday, July 9, 2013. The State filed charges within the required 72 hour period and Bryson's claim fails.

G.     PERJURY

Bryson asserts that Kiser falsely testified at trial that he was previously acquainted with Bryson because Bryon was on his case load. This assertion is unsupported by the record because Kiser did not testify as such. Nevertheless, to the extent that Bryson is challenging the credibility of Kiser, "[c]redibility determinations are for the trier of fact and cannot be reviewed on appeal." *Camarillo,* 115 Wn.2d at 71. This claim fails.

11

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, J.

Johanson, C.J.